**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Antoine Ingram, individually and on behalf other persons similarly situated,**

**Plaintiffs,**

**-against-**

**Pinder Security Systems, Inc., et al.,**

**Defendants.**

**1:26-cv-02712 (RA) (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiff Antoine Ingram ("Ingram" or "Plaintiff") brings this action individually, and on behalf of other persons similarly situated, against Defendants Pinder Security Systems, Inc. a.k.a. Pinder Elite Security ("Pinder Security"), W.S.C. of N.Y., Inc. ("WSC") and Zakia Pinder ("Pinder") (collectively, "Defendants"), alleging claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law. (*See* Compl., ECF No. 1, ¶¶ 8-12, 52-84.) Presently before the Court is Plaintiff's motion seeking to conditionally certify an FLSA collective and to approve notice to putative collective members, as well as certain other ancillary relief. (*See* Pl.'s 8/31/26 Not. of Mot., ECF No. 24.) For the reasons set forth below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff makes the following allegations:[1]

---

[1] At the conditional certification stage, courts "should not weigh the merits of the underlying claims," *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298

Pinder Security is a security company that hires security guards who are placed at retail shops and restaurants throughout New York City to provide security services. (Compl. ¶ 8.) Pinder Security is a subsidiary of WSC, which is a security and protection agency headquartered in New York City. (*Id.* ¶¶ 10-11.) Pinder is the owner and operator of Pinder Security and responsible for hiring, scheduling and terminating employees. (*Id.* ¶ 12.)

Ingram was employed by Defendants as a security guard from approximately March 2022 to approximately February 2023, and again from approximately December 2025 to January 2026. (Compl. ¶ 14.) At Pinder's direction, Ingram was placed at restaurants and shops in Manhattan, Queens and Brooklyn, including a Krispy Kreme location in Manhattan, the Mulberry store in Manhattan and multiple McDonald's locations in Manhattan, Brooklyn and Queens. (*Id.* ¶ 15.) Defendants classified Ingram as a "self-contractor," and did not provide him overtime pay for hours worked over 40 in a week. (*Id.* ¶ 16.)

On April 2, 2026, Ingram filed his Complaint in this action. (*See* Compl.) The Complaint contains six causes of action, but only one of them is asserted under the FLSA on behalf of a collective (*i.e.*, the Second Cause of Action for failure to pay overtime compensation). (*See id.* ¶¶ 57-66.) On July 2, 2026, Defendants filed their Answer. (*See* Ans., ECF No. 19.) On July 31, 2026, the Court entered an Order requiring Ingram to file any motion to certify Plaintiff's FLSA claims as a collective no later than August 31, 2026. (*See* Case Mgt. Plan & Scheduling Order, ECF No. 23, ¶ 15.) On August 31, 2026, Ingram timely filed the motion now before the Court. (*See* Pl.'s

F.R.D. 152, 158 (S.D.N.Y. 2014) (citing *Lynch*, 491 F. Supp. 2d at 368) (internal quotation marks omitted). Accordingly, for the purpose of resolving the collective certification motion, the Court treats the facts alleged by Plaintiff as true. *See Cortes v. New Creators, Inc.*, No. 15-CV-05680 (PAE), 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

8/31/26 Not. of Mot.) On September 29, 2026, Defendants filed their opposition memorandum. (*See* Defs.' 9/29/26 Mem., ECF No. 29.) After multiple extensions during which the parties sought to consensually resolve or narrow the issues relating to the pending motion,[2] Plaintiff filed his reply memorandum on November 17, 2026. (*See* Pl.'s 11/17/26 Reply, ECF No. 40.)

## DISCUSSION

### I. Collective Certification

Plaintiff seeks conditional certification of the following collective:

> [A]ll persons whom Defendants employed as security guards paid by the hour at any time between April 2, 2023 and the date of this Order, including security guards whom Defendants classified as "self contractors" or independent contractors[.]

(*See* Revised Proposed Order, Ex. 1 to Pattiz 11/17/26 Decl., ECF No. 41-1.)[3]

#### A. Legal Standards

The FLSA provides that "any one or more employees" may bring an action against an employer "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a party to such an action, an employee must file written consent in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as

---

[2] *See* ECF Nos. 30-39.

[3] Plaintiff initially had sought conditional certification of the following collective:

> All persons whom Defendants employ and have employed as security guards at any time since March 1, 2023 to the entry of judgment in this case (the "Collective Period"), who were non-exempt employees under the FLSA[.]

(Compl. ¶ 50.) Plaintiff later modified the collective, as set forth in the text above, after discussions with defense counsel. (*See* Pattiz 11/17/26 Decl., ECF No. 41, ¶ 6.)

represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has approved a two-step method for the exercise of the Court's discretion. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 560 (S.D.N.Y. 2015) (citing *Myers*, 624 F.3d at 554-55). First, in the step known as "conditional certification," if the named plaintiffs make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" the trial court may make an initial determination to send notice to potential opt-in plaintiffs. *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). At the second stage, which typically occurs after discovery is complete, the court determines whether the opt-ins are in fact "similarly situated" to the named plaintiffs; if the record reveals that they are not, the court may "de-certify" the collective action and dismiss those plaintiffs' claims without prejudice. *Myers*, 624 F.3d at 555 (citations omitted).

During the initial conditional certification stage, the requirement of a "modest factual showing" cannot be satisfied solely by "unsupported assertions." *Myers*, 624 F.3d at 555. However, because the purpose of this first stage is "merely to determine *whether* 'similarly situated plaintiffs do in fact exist," a plaintiff has a low burden of proof. *Id.* (emphasis in original) (citing *Hoffmann*, 982 F. Supp. at 261). Documents properly considered on a conditional certification motion "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013) (quoting *Hamadou*, 915 F. Supp. 2d at 661).

To determine whether members of a collective are similarly situated, "district courts typically review several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014). "Plaintiffs need not present evidence for each and every opt-in Plaintiff so long as they can show that Defendants engaged in a policy, plan, or scheme of FLSA violations." *Lynch v. City of New York*, No. 16-CV-05677 (KBF), 2017 WL 4877425, at *3 (S.D.N.Y. Oct. 27, 2017) (internal citation and quotation marks omitted).

**B. <u>Application</u>**

Defendants "do not dispute that the first-step showing is a lenient one," and "do not ask the Court to deny notice." (Defs.' 9/29/26 Mem. at 1.) Rather, Defendants request the Court to "narrow the collective to the locations at which plaintiff himself performed services, and in the alternative to the single site at which he identifies another guard by name." (*Id.*) The Court, in its discretion, finds that Plaintiff has made his modest showing that the employees in the putative collective were subject to the same policies with respect to Defendants' failure to pay overtime wages and therefore denies Defendants' request.

"Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan." *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011). In the present case, Defendants employed security guards at locations throughout New York City belonging to their clients. (*See* Ingram 8/31/26 Decl., ECF No. 26, ¶ 5.) A reasonable inference can be drawn that Defendants engaged

in the same practices with respect to all their security guards, regardless of the customer location to which the guards were sent. The alleged FLSA violations stem from a centralized corporate mandate—a policy classifying security guards as independent contractors. (*See* Ingram 8/31/26 Decl. ¶ 34 ("From speaking with them and my personal observations, I know that the other security guards, like me,[4] were classified as 'self-contractors[.]'"); *see also* Defs.' 9/29/26 Mem. at 23 ("Defendants maintain that the guards they engaged were independent contractors and not employees[.]").) "[I]f discovery later shows that only employees who worked at *particular* locations are similarly situated to plaintiff, the Court may, at that time, decertify the collective action." *Rosario*, 828 F. Supp. 2d at 517 (emphasis in original) (citation omitted).[5]

## II. Equitable Tolling

Plaintiff requests that the statute of limitations for opt-in plaintiffs be equitably tolled. (*See* Pl.'s 8/31/26 Mem., ECF No. 25, at 20-21.)

### A. Legal Standards

The FLSA has a two-year statute of limitations "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The statute of limitations for each putative collective action member continues to run until he or she files written consent with the court to join the lawsuit. *See id.*; 29 U.S.C. §

[4] According to Ingram, the other security guards with whom he spoke included employees named Hakeem and Samira. (*See* Ingram Decl. ¶ 35.)

[5] In opposition to the scope of the collective, Defendants principally rely upon *Norris v. ProCore LLC*, No. 21-CV-07014, 2022 U.S. Dist. LEXIS 73889 (E.D.N.Y. Apr. 21, 2022). (*See* Defs.' 9/29/26 Mem. at 3-4.) *Norris*, however, is inapposite. In *Norris*, a meal-break practice was at issue that the plaintiffs could not show applied to locations other than where plaintiffs worked. *See Norris*, 2022 U.S. Dist. LEXIS 73889, at *2-3, *9-11. Here, by contrast, Defendants contend that every guard was an independent contractor. (*See* Defs.' 9/29/26 Mem. at 23.)

256(b); *Hoffmann,* 982 F. Supp. at 260 ("[O]nly by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled."). Courts have the power to equitably toll the statute of limitations "as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Iavorski v. United States I.N.S.,* 232 F.3d 124, 129 (2d Cir. 2000) (internal citations omitted). However, equitable tolling is only to be applied "in rare and exceptional circumstances." *Zerilli-Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (cleaned up).

**B. <u>Application</u>**

In the present case, it cannot be determined at this time whether equitable tolling will apply to any future plaintiff who hereafter files a consent to opt in. Thus, the Court finds that it appropriate for Plaintiff to include in his notice all potential members of the collective employed by Defendants since April 2, 2023, three years before this action was filed, with the understanding that Defendants may challenge the timeliness of individual Plaintiffs' claims in the future. See *Yap*, 146 F. Supp. 3d at 565 ("Because equitable tolling issues often arise as to individual opt-in plaintiffs . . . courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." (citation and internal quotation marks omitted)).

Considering the foregoing, the Court conditionally certifies the following collective of putative opt-in plaintiffs for notice:

> [A]ll persons whom Defendants employed as security guards paid by the hour at any time between April 2, 2023 and the date of this Order, including security

guards whom Defendants classified as "self contractors" or independent contractors[.]

**III. <u>Forms Of Notice And Dissemination Plan</u>**

**A. <u>Legal Standards</u>**

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice." *Hernandez v. City of New York*, No. 16-CV-03445 (RA), 2017 WL 2829816, at *6 (S.D.N.Y. June 29, 2017) (quoting *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 612 (S.D.N.Y. 2016)). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions and ensure that putative plaintiffs receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*. (quoting *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015)).

**B. <u>Application</u>**

Plaintiff has filed a revised proposed notice, together with a proposed consent form and reminder notice, and Plaintiff has proposed various means of dissemination of notice. (*See* Ex. 2 to Pattiz 11/17/26 Decl., ECF No. 41-2; *see also* Pl.'s 11/17/26 Reply at 9-10.) Having considered the parties' respective positions regarding the foregoing, the Court in its discretion approves Plaintiff's proposals.

## IV. <u>Plaintiff's Requests For Information</u>

Plaintiff seeks to have Defendants produce various information regarding members of the collective. (*See* Proposed Order, Ex. 1 to Pattiz 11/17/26 Decl., ECF No. 41-1.)

### A. <u>Legal Standards</u>

Courts in this Circuit "routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action" following conditional certification. *See Anglada v. Linens 'N Things, Inc.*, No. 06-CV-12901 (CM) (LMS), 2007 WL 1552511, at *7 (S.D.N.Y. Apr. 26, 2007) (collecting cases), *report and recommendation adopted* (May 22, 2007). Likewise, courts often grant requests for production of telephone numbers, email addresses and dates of employment for potential class members. *See Diatta v. Iguana New York Ltd.*, No. 15-CV-06399 (AT), 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions." (citation omitted)); *see also Munoz v. Grp. US Mgmt. LLC*, 348 F.R.D. 192, 207 (S.D.N.Y. 2025) (requiring production of, *inter alia*, list of names, addresses, email addresses, telephone numbers, dates of employment and job titles); *Racey v. Jay-Jay Cabaret, Inc.*, 15-CV-08228 (KPF), 2016 WL 3020933, at *10 (S.D.N.Y. May 23, 2016) (ordering defendants to provide "a list of the names, addresses, telephone numbers, email addresses, and dates of employment for potential class members").

### B. <u>Application</u>

In its discretion, the Court grants Plaintiff's requests for information. The Court finds that this information will assist in the notice process. Accordingly, Defendants shall produce such

information to Plaintiff's counsel within 21 days, with the restrictions noted in the Conclusion below.[6]

**CONCLUSION**

For the reasons set forth above, Plaintiff's motion (ECF No. 24) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED, as follows:

1. A collective action of the following individuals is conditionally certified: all persons whom Defendants employed as security guards paid by the hour at any time between April 2, 2023 and the date of this Order, including security guards whom Defendants classified as "self contractors" or independent contractors (the "Collective Members");

2. The Court-Authorized Notice of Lawsuit and the Consent to Become Party Plaintiff form (together, the "Collective Action Notice Package") that are attached to the Pattiz 11/17/26 Declaration are approved, and Plaintiff is authorized to distribute them to the Collective Members;

3. The e-mail notice and text-message notice that are attached to the Pattiz 11/17/26 Declaration are approved;

4. Within twenty one (21) days of this Order, Defendants shall produce to Plaintiff's counsel, in a sortable electronic format (such as Excel or CSV), the names, dates of employment, job titles, last known mailing addresses, e-mail addresses, and

---

[6] Defendants' legitimate concerns regarding confidentiality (*see* Defs.' 9/29/26 Mem. at 20-21) are addressed by the limitation that Plaintiff's counsel shall use the Collective Member Contact List solely to administer notice under this Order and shall not disclose it to anyone other than a notice administrator retained for that purpose. (*See* Conclusion point 4, *infra*.)

telephone numbers (including mobile numbers) in Defendants' possession, custody, or control for the Collective Members (the "Collective Member Contact List"). Plaintiff's counsel shall use the Collective Member Contact List solely to administer notice under this Order and shall not disclose it to anyone other than a notice administrator retained for that purpose;

5. Plaintiff shall distribute the Collective Action Notice Package to the Collective Members by first-class mail, e-mail and text message within twenty (20) days of receiving the complete Collective Member Contact List (the "Distribution Date");

6. The Collective Members shall have sixty (60) days from the Distribution Date to e-mail, fax or mail (with the postmark being the determinative date) their Consent to Become Party Plaintiff form to Plaintiff's counsel (the "Opt-In Period"). Plaintiff shall be responsible for filing these forms with the Clerk of Court; and

7. Thirty (30) days into the Opt-In Period, Plaintiff may send one reminder, by the e-mail and text message that are attached to the Pattiz 11/17/26 Declaration, which are approved, only to those Collective Members who have not yet returned a Consent to Become Party Plaintiff form.

**SO ORDERED.**

Dated: New York, New York
November 20, 2026



STEWART D. AARON
United States Magistrate Judge